Thank you, Your Honor, and good morning. My name is Cliff Casey, and I'm the lawyer for the appellant in this case, Jacqueline Allen. I really don't have too much more to say about this case other than what has already been put in the opening brief and the reply brief. I can sum up this appeal in three words, and that's Lemire, Lemire, Lemire, the Eighth Circuit case, in which I believe you can take the name Lemire out. Counsel, could I interrupt for just a moment? Could I ask one of the law clerks to close the doors to the courtroom, please? Thank you. I'm sorry for the interruption, counsel. You may proceed. That is the Eighth Circuit case, where I believe you can take the name Lemire out, stick in the word Dr. Allen, and have the exact same case except that Lemire did his damage with a gun and Dr. Allen did his damage with his hands. Counsel, what do we make of the prior decision that the plan was proposed in good faith, and what kind of new evidence, if any, is there that would permit that to be revisited? Your Honor, as pointed out in the brief, I believe the new evidence is the judgment that was rendered in the California case, as opposed to the allegation that these damages were caused to Mrs. Allen by Dr. Allen. We've got a judgment, and I believe that's distinguishing. What struck me as surprising, Mr. Casey, was that, yes, you got the new judgment, but you never moved to reopen the plan. Your Honor, I believe that's really incumbent upon the debtor to do that, but even so… Why would the debtor want to do that to his disadvantage? You're the one that's being benefited. Well, the debtor might want to do it to his advantage in the case that he's putting forth something to pay to Mrs. Allen, as opposed to a zero-percent plan, a zero-percent plan. Well, he'd already had, in effect, a determination that he didn't know anything. Except for the fact that there was a complaint for non-dischargeability and relief from state from that judgment to go back to the California court to determine whether or not there's the obligation or the liability, and then going back to bankruptcy court to determine whether it's dischargeable or not. I just don't see how Mrs. Allen could have gone into court with that adversary complaint pending to change anything. But when it was over, when the judgment was final… And that's when they went back into court, basically put a trial on it, and the judge said, no, this debt is dischargeable. I have a couple of problems with the argument, and maybe you can educate me out of them. One is, as egregious as this debtor's conduct was, it looks like it was a dischargeable debt. It wasn't one of the categories of debts where discharge is prohibited. The other problem that I have, and these are independent problems. It looks like either one of them is a real problem for you. If I understand the facts right, she got her judgment in 2002. The plan was not confirmed until 2004, and she didn't ask the bankruptcy court to give her some of her husband's money after she got her judgment in 2002. And the reason she didn't ask, it was deliberate. She didn't ask because she thought that the bankruptcy judge was biased against her. There's no support for that thought that I can see from the record, and it would be pretty unusual that the bankruptcy judge even cared, one way or the other, about the persons as opposed to the law and the facts. So there's no reason to think there would be any bias. It seems like either one of those is a big problem for you, and you've got both. Your Honor, the plan was confirmed in 1999. The plan was confirmed in 1999. And with regard to the perceived bias, the problem was... I thought something was open on it until 2004. The plan concluded in 2004. December 6th of 1999 was the confirmation date of the plan, and the judgment was issued in March of 2002. But in 2004, the whole thing was closed up after the trustee said that all the payments had been made. So now that it has been closed, what possible relief can be granted? What could we do as a practical matter once it's been closed? Well, the appeal is from the decision saying that the debt was dischargeable. Which happened in 2004 also. Which happened in 2004. And what we're here today seeking is determination that the debt was not dischargeable. My difficulty goes back to the one that I mentioned at the beginning, which is the distinction that seems potentially between this case and LaMere, which isn't binding on us, but I understand you want us to adopt its thinking. In that case, I'm not aware that there had been a previous appeal that had dealt with the issue of good faith. And here there is a prior decision. What effect does that have? In this case, the prior decision concerning the confirmation of the plan? Judge Graber and I were on that case, that appeal decided in January of 2002, which was pre-judgment, of course, but it upheld the bankruptcy court's determination. Yes, and the authorities that I cite in the brief say that it shouldn't be binding today and it wasn't published and that there were the new facts of the new judgment. Well, not published is irrelevant as between the same parties. This is the same case. So some other bankruptcy case can't cite this, but for the purpose of law of the case or claim preclusion, it's completely relevant. And so the real question is when we held that the bankruptcy court's finding of good faith was not clearly erroneous, can we revisit that on the ground that at the time the issue of the judgment wasn't before us or not? It would only seem to make sense that we could, and I say that, Your Honor, because what other reason would there be for giving relief from stay to go back to the Californian court to get this all determined and then come back to the bankruptcy court or go back to the bankruptcy court? For what purpose? It just doesn't make sense to give relief from stay to come back and say, well, we've already determined this and we're not going to revisit again. Well, counsel, maybe this is a good time to hear from the other side, and you can reserve your 12 minutes. Thank you. May it please the court, counsel. My name is James Patton. I represent Christopher Allen. The confusion, I think, of Jacqueline Allen in this case is that she's applying the good faith criteria, which is a plan confirmation criteria, to the discharge, which results when the plan is confirmed and fully performed. Good faith doesn't go to whether or not the claim is discharged. It's a legal issue. The issue of law? The discharge is an issue of law. Right. Good faith is an issue of fact. Right. And here the question in part is whether the prior finding of the previous panel, that the plan was put together in good faith, is still binding because of the change of circumstance that happened after that for your client's wrongdoing. I think that the exception for the law of the case, which allows new evidence at a subsequent trial, and as one of you noted, there wasn't a subsequent trial because Jacqueline Allen never went back after she had her claim liquidated, which I would submit was improperly liquidated. But once it was liquidated in, I think it was March or January of 2002, she should have, and as Judge Siebel noted, she should have gone back to the bankruptcy court and requested the court, based on her liquidated claim, either amend the plan, dismiss the case, or convert the case to Chapter 7. So that was the mistake. Assuming that the equities are in her favor and assuming that the new judgment was new evidence that was not available to the previous panel, you're saying she didn't jump through the proper procedural hoops to get that issue before the lower court. Yes. She should have taken the liquidated judgment back to the bankruptcy court and said, Judge, now I have a liquidated judgment. This is how much my claim is, and now I want to argue that the plan is not proposed in good faith. And there's no way that she can do that under the procedural posture of this case? Not at this point in time, Your Honor, because under Section 1328, once the debtor has completed payments required under his plan, which he did in March of 2004, he completed all the payments. Once he does that, then the court is obligated to, as soon as practicable, give him his discharge. So he's done everything that he's supposed to do under the plan. She had a period of two years, from early 2002 until 2004, to come back into the bankruptcy court and raise the issue anew with her liquidated claim, and she didn't do it. Had she done that, she could have given the bankruptcy court an opportunity to make an assessment of the good faith. Was the bankruptcy court ever on notice through any other device? Obviously, you correctly show that there was no formal motion made, but was there any other way that the bankruptcy court was made aware of the state court judgment? No, not until, and this is in the docket sheet, I believe it was in January of 2004, the court sent out a request for status of her liquidation of that claim. And it was in response to that request for the status that the court was first made aware that the claim had been liquidated. So why wasn't that sufficient, and why shouldn't the court, between January and March of 2004, have reopened the question of good faith? I think it was incumbent upon Jacqueline Allen to request the court to reopen it. I don't believe that it was the debtor's obligation to go back in the court and say, Judge, look at confirmation of my plan again. And I don't think the court has to do it on its own. There needs to be some mechanism where it's brought to court. There has to be a motion or some kind of proceeding, and she never initiated any. And the bankruptcy court's decision in March of 2004 that that debt was dischargeable was correct because? Because that's absolutely, positively, clearly what the law is. What? That the willful and malicious injury claim is absolutely dischargeable under Chapter 13. Now, the law has changed since then, has it not? Actually, no, it hasn't, Your Honor. In 2004, that was part of the super discharge of Chapter 13. That was part of Congress's plan to get people to file 13 so they could discharge a bunch of claims that weren't dischargeable under Chapter 7. With the new bankruptcy amendments, almost all of the super discharges have been eliminated, but ironically, claims for malicious and willful injury still are dischargeable under Chapter 13. That's one of the few that would be included in a Chapter 13 discharge. And that was the only issue that was before the court in March of 2004 was, is this claim of this nature dischargeable under Chapter 13? Could you tell me as a practical matter, had the wife made a motion in the bankruptcy court in 2002, within a reasonable time after obtaining her state judgment, to amend the plan so that she would get some money, would there have been some money she could get? And is it the case now that the debtor has completed payment and been discharged that there is, as a practical matter, no money she could get? I didn't hear the last part. Is there, as a practical matter, did the chance of her getting money turn from a real possibility to no real possibility because of her delay from 2002 to 2004? The debtor during that time, Your Honor, was on disability. He suffered from, and this isn't in the record, but he suffered from some strokes and other medical problems and he could no longer practice medicine. So he had a disability policy that was paying him some money. I don't believe that Jacqueline Allen, as a practical matter, could have gotten more money if she returned to bankruptcy court, but she could have derailed his bankruptcy plan. She could have come in and said, Judge, now that the claim is liquidated and I have this big claim out there against Dr. Allen, his plan is in bad faith because it doesn't pay me enough. And because of the reasons, perhaps, set out in Lemire. Yes, although I don't believe that Lemire is binding on this court or in any way controlling, but she could have made the same arguments that the creditor in Lemire made and tried to persuade the bankruptcy court to increase the plan payments, which may have derailed the plan because the debtor couldn't afford to make increased plan payments, or she could have asked that the case be dismissed because she couldn't make larger payments or because now it was in bad faith, or she could have asked that the case be converted to a Chapter 7, again because the debtor wasn't meeting the good faith test. She could have let the bankruptcy judge examine the totality of the circumstances to determine whether good faith continued to exist in view of her liquidated claim. She didn't do it. The sort of the odd posture that we have here is that she filed a dischargeability complaint in the Chapter 13. And a dischargeability complaint is common in a Chapter 7. You have to file them if you want to claim that these debts are non-dischargeable in a Chapter 7. But you don't see them in Chapter 13s because they're discharged in Chapter 13. And what I think Jacqueline Allen has done here is she's completely confused the relationship of good faith to dischargeability. Good faith has nothing to do with whether a willful and malicious claim is discharged. Good faith has to do with whether a plan can be confirmed. And that's what Lemire says. That's what all the cases I've examined, it says. It goes to confirmation of the plan. The plan was confirmed in December of 1999. The debtor made all of his payments under it. At any point after it was confirmed, she could have brought back to the bankruptcy court and raised an issue by filing a motion to say, there's something new here, Judge. I want you to reconsider the debtor's good faith in his plan. There could have been an evidentiary record presented in the bank, created in the bankruptcy court, and it could have gone up on appeal. And then you could have looked at it, whether the bankruptcy court committed clear error by either finding good faith or not finding good faith. But she didn't do all of that. She wants you to act as the trial court in this case. She wants you to act and say, as a matter of law, there's no good faith here. And I think that's completely improper, and that's not the way that it should be done. You should be reviewing the action of the bankruptcy court. You shouldn't be acting as a trial court. And that's essentially what she's asking that you do. Anything further? Thank you, counsel. Thank you. Mr. Casey, you have some reserve time. Would you mind – we may have covered this before with you, but I'm still puzzled on why there was no communication to the bankruptcy court between the date of the judgment, which was March of 2002, and the January – up to January 8th, or whenever it actually came in after January 8th. Your Honor, the only answer I have for that, in my brief on that, was that Mrs. Allen's lawyer that she had in the bankruptcy withdrew from the case because she was in pro se representing herself. She's disabled, and she thought that it was incumbent upon Dr. Allen  I thought there was something in the record about her saying that she thought the bankruptcy court was biased against her, so she didn't want to put it before them. That's true. I believe it's a confirmation order of the bankruptcy judge. It addresses a couple of motions for relief from the state and basically comes out at the end of it saying, you know, we've got to get this debtor going, and the only way to do that is to jettison the wife. We've got to have her sit down and basically decline. Did she make that claim? I remember reading somewhere in the record that she made that claim that was her justification for not putting it before the bankruptcy court. Am I right? I don't remember her making that claim directly to the court itself. And with that, Your Honors, I will submit. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Graber